Colcock, J.
This action was brought against w w the defendant, indorser of a note which was made by John Taylor, payable to him. The note was date<^ ^lst January, 1805, payable at sixty days. after <^a*'e' Jt aPPeaI>e(l by the evidence of Mr. John P. Martin, who was produced by the plaintiff, that as a friend of Mr. Ford, he carried the note to Charles-^011’ an(l Save it to Mr. Kiddell, in place of Mr. Ford’s note, which Kiddell held, some time in the latter part of the month of March after it was drawn, and consequently before it was payable. That several months afterwards, he believed in the month of June, he was in Charleston, when Kiddell shewed bim a letter, he had received from Mr. Taylor on the subject of the note, in which Taylor apologized for delay of payment, and asked a further indulgence of, he believed, sixty or ninety days, with which Kiddell declared himself satisfied. On returning to the country, witness said he mentioned the circumstance to Ford, and told him that he, Ford, ought to pay that money $ to which Ford replied, he should have done so, had Kiddell used due diligence to have got the money from Taylor. He further stated, that a considerable time after he saw Kiddell, who informed him that Taylor had not paid the money, and that he should sue both Taylor and Ford. *679 It did not appear that Kiddell applied in time to Taylor for payment, or that he ever gave any notice of non-payment to Ford. The defendant’s counsel moved for a non-suit, on the ground that due diligence had not been used, and that no notice was given of the non-payment of the note, which motion was overruled by the court; he then produced the record of recovery against Taylor, by which it appeared that suit was not brought until May, 1807. It further appeared that Samuel Taylor, the then sheriff, had levied the execution against Taylor, and was proceeding to sell, when he was sta^ ed by KiddelPs attorney or agent, it appearing that the property levied on was under mortgage, and that the mortgagees were willing to give indulgence. The verdict was for the plaintiff, and a new trial is now' moved for on the following grounds :— 1st, That the Court instructed the jury that the usual notice to an indorser of a note was not binding in cases in the country, and was often departed from in practice. 2nd, That it was proved that the plaintiff extended the credit to the maker of the note several months after it became due, and without giving any notice to the indorser, and declared himself satisfied with the promises of the maker, which was a legal discharge of the indorser. This statement is taken from the brief, to which the presiding judge added, that it was notorious that Taylor was insolvent, and that Ford knew it.
On the first ground, it appears that the presiding. judge was not correctly understood by ne defend- *680 an^s counsel. On the second, I am of opinion, that % . . r notice and demand are both indispensibly necessary, even in the case of an insolvent; and that this is supported by the highest authority as well as hy reason of the doctrine. Chitty on Bills, 154. 182. In the first place, if the insolvency of the drawer is to have so important an effect on the established rule of law, I should presume that the highest- evidence which the nature of the fact admits should be produced. Can it be said that common report is to be sufficient’? In my judgment, it is the least satisfac- ? tory of any description of evidence which could be offered in such a case, and my own experience has confirmed my judgment in this; fori have repeatedly known money to be obtained from persons said to have been insolvent for years.' At least, then, it ought to be proved that the drawee had taken the benefit of the insolvent, debtor’s act, which was not done in this case.
But it was said that in the case of Administratrix of D. Minton vs. James Clark, decided in April, 1807, this Court had ruled that in the case of a known insolvent, a notice to the indorser was not necessary; but I understand that the case did not go so far as to say that a demand could also be dispensed with : so that, admitting the authority, which I am of course bound to do as far as it goes, it does not discharge the holder from the necessity of making a demand and using due diligence; and there is no evidence of any demand previously to the suit which was upwards of two years after the note became *681 due. I am, further of opinion that the extension of the credit after the note fell due, was a discharge of the liability of the indorser, and this was proved by Mr. Martin. See Sarsedass’s case, 2 Bay, 217. I am, therefore, in favour of the motion.
Brevarb, J.
In order to fix an indorser, it is necessary in general that the holder should demand, or use due diligence to obtain payment., of the maker, as soon as the note becomes payable ; and, on' default of payment, should use due diligence in giving notice thereof to the indorser, and of his intention to have recourse to him. It is also usual to state in the declaration, a demand on the maker, his refusal to pay, and notice to the indorser; but there may be circumstances which will excuse actual presentment and notice, or which may be considered equivalent thereto.
It has been decided in our courts, that the payee of a note indorsing it, knowing the insolvency of the maker, cannot insist on notice. In England, it has been ruled otherwise, and that a known bankruptcy is not equivalent to a demand or notice. 2 H. Blackstone, 609. It is the general tinderstand-ing of the parties, when negotiable paper is endorsed, that the legal consequenees'shall attach, and that an indorser is entitled to all the privileges of that character. The necessity of a demand, notwithstanding the bankruptcy of the maker or acceptor, in prder to charge the indorser or drawer, is found- *682 eq solely on the custom of merchants, (it is said) and that the courts cannot change the custom. 8 East. 242. Ja this state, however, the rule has been relaxed, and it has been determined that a known bankruptcy shall be equivalent to a demand and notice. The case of Clark vs. the Administratrix of Minton, which was' decided in the Constitutional Court of Appeals at Columbia, in April, 1807, established that distinction. The case was tried before myself, in the court of common pleas, for Kershaw district; the action was against the indorser’s administratrix, upon a note made by Douglass, payable the 1st April, 1802, bearing date September, 1800. It did not appear when it was indorsed, in fact, otherwise than by the indorsement itself, which was dated September, 1800; the declaration was in the usual form. It appeared in evidence that Douglass, the maker, became insolvent and was declared a bankrupt, the 9th of November, 1801 j that he left the state in a vessel bound to Liverpool, in February, 1802, and that he landed in Jamaica, where he afterwards remained; also, that he was reputed, and generally believed to be insolvent from the time of going off the state. No evidence was given of demand, or due diligence to get payment from the maker, nor any notice to the indorser, of the indorsee’s intention of resorting to him; a motion for a non-suit was overruled, and the plaintiff had a verdict. I held that under the circumstances of the case, it was not incumbent on the plaintiff, to prove any demand of, or diligence to obtain payment. It was not pretended that the ev- *683 idenee to excuse the want of notice could be rebutted.
After hearing arguments for a new trial, the whole court (Grimke, Waties, Bay, Trezevant and Wilds, justices,) confirmed the law as laid down by the district court; and Judge Waties in delivering the resolution of the court, said that the strict rule of the English law had been often departed from, and particularly in the case oi Kiddell vs. Peronneau, which had been decided in Charleston many years before ; he further declared that a known bankruptcy or insolvency was equivalent to demand and notice, and that no good reason could be assigned to the contrary. I am not disposed, however, at present, to carry the doctrine farther than was done in the case of Clark vs. Minton’s Administratrix. There was no proof of bankruptcy in this case, nor of an absolute declared insolvency under the insolvent debtor’s or prison bound’s acts.
It has been said that Taylor’s insolvency was known to Ford at the time the note was indorsed, and that he acknowledged it; but I am not satisfied that such an insolvency was understood as would be equivalent to a declared bankruptcy or insolvency of record; besides a man may acquire property after being insolvent; it ought to be an utter insolvency at the time the money becomes payable to excuse the want of ordinary diligence. In the present case, there was no sufficient evidence of such insolvency; there was no sufficient evidence of due *684 diligence to demand the payment of the maker of the note, or of notice to the indorser, to satisfy me ^ pontiff was entitled to the verdict he has obtained. Besides, I am not certain that the in-dorsee did not give credit to the maker, and allow him further time for payment. If he did so, the indorser is absolved from all responsibility. I think the circumstances of the case are strong to warrant that presumption. If I were sure that the jury decided this point in favour of the plaintilf upon a fair and full consideration of the evidence, I should not venture on this ground to set aside the verdict; but I incline to think it might have been overlooked, attending to other points which were brought more strikingly to their notice.
I do not feel myself at liberty to presume fraud on the part of the it dorser. The circumstances of the case do not authorise the belief of fraud, which ought, to he sufficiently proved, and ought never to be presumed. He might have known of Taylor’s general want of means to pay his debts, without, knowing that he was utterly insolvent; many men are deemed insolvent on account of their involved circumstances and want of active funds, who are nevertheless far from a state of legal insolvency; and this might have been Taylor’s case, when the note in question was indorsed, for any thing that appears to the contrary from the evidence reported. Unon the whole, I am of opinion, that the deiend-aht ought to have another opportunity of contesting *685 the justice of the plaintiff’s demand, and the legal propriety of the verdict in question.
Grimke, J. concurred.
Bay, J. dissented.